# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEMAL BOZKURT, | Civil Action No. |
| Plaintiff, | 18-12622-FDS |
| v. | |
| CITY OF LAWRENCE, | |
| Defendant. | |

## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**SAYLOR, J.**

This case arises out of the termination of a library employee. Plaintiff Kemal Bozkurt was employed at the Lawrence Public Library for 18 years, eventually rising to the position of Assistant Director. In early 2017, he was issued warnings by his supervisor for insubordination and abuse of authority. Later that year, he appeared before the library's Board of Trustees for a disciplinary hearing. He was then dismissed for deficient performance.

Bozkurt filed suit, asserting three claims that all allege, in substance, that defendant the City of Lawrence violated Section 4 of the municipal administrative code by failing to make a "reasonable effort" to correct his performance before dismissing him. Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the following reasons, the motion will be granted.

**I.     Background**

    **A.     Factual Background**

The facts are set forth as described in the complaint and attached exhibits.

Kemal Bozkurt began working for the Lawrence Public Library as an Assistant Librarian on August 30, 1999. (Compl. ¶ 3). He was promoted to Assistant Director in January 2015 and became Acting Director in September 2015. (*Id.*). Soon after, he returned to his position of Assistant Director after a permanent Director, Jessica Valentin, was hired. (*Id.*).

On March 29, 2017, Bozkurt received a "warning letter" from Valentin. (Compl. Ex. A). The letter stated that Bozkurt had received a "verbal warning for insubordination for failure to acknowledge and/or meet [Valentin's] request for meetings." (*Id.*). It described the "insubordination" as follows:

> On two occasions, you were sent meeting requests via email to meet with your supervisor and failed to comply. On the first occasion, you did not acknowledge the meeting invitation but later cited that you were 'working the second shift.' On the second occasion, today, you acknowledged the meeting request but once again cited that you were 'working the second shift' and responded by saying we could meet during the timeframe you proposed. Furthermore, your reason for not being able to meet with me due to you scheduling yourself for later in the day is not consistent with your text communication today stating that you were at an appointment in Manchester and might be in a little late.

(*Id.*). Valentin further warned that Bozkurt, as Assistant Director, was expected to "make [himself] available for regular meetings and special requested meetings." (*Id.*). In addition, she stated that "as a salaried employee, [Bozkurt was] expected to work outside of a regular hourly schedule and make every attempt to meet requests made by [Valentin]." (*Id.*). The letter concluded by indicating that Valentin "agreed to meet with [Bozkurt] on a bi-weekly basis to provide feedback & guidance." (*Id.*). On April 5, 2017, Bozkurt signed the letter acknowledging that he had received the warning. (*Id.*) However, the complaint adds that Bozkurt sent Valentin an email "reminding her that he was working second shift and she agreed." (Compl. ¶ 8).

Valentin sent Bozkurt a second "warning letter" on April 18, 2017. (Compl. Ex. B). The

letter stated that Bozkurt had committed an "abuse of power." (*Id.*). Specifically, the letter stated:

> On Friday, April 7, you made me aware via email that you'd be using flextime on Wednesday, April 12 morning and would be coming in at 1:00 p.m. You mentioned that Elvin Fabian [a subordinate employee] had cancelled an appointment and would be available to cover you. On Tuesday, April 11 . . . I . . . asked for a confirmation that you'd be in at 1:00 p.m. the following day. You hesitated and said that you'd try to be here at that time. On Wednesday, April 12 morning, you texted me to inform me that your uncle had passed away and that you wouldn't be coming in at all. [Later], I called the front desk to inform the staff that I was on my way and to get a heads up if anyone called out sick for coverage purposes. [Fabian] informed me that he noticed you were out and then made the following connection: [h]e said that you called him on his day off on Friday, April 7 and asked him to change his medical appointment because he was 'really needed at work on Wednesday.' He did not know the reason but complied with your request. On Wednesday, he understood that you had him change[] his approved time off to accommodate your schedule which as an administrator, is an abuse of power.

(*Id.*). Moreover, the letter stated that while Bozkurt had been approved to take time off on April 13 and 14, 2017, he had failed to ensure that someone would cover his payroll duties for those days. (*Id.*). In response, Bozkurt stated that the library had historically been "flexible" in changing schedules and that he directed Fabian to work on April 12 to ensure that there was coverage in the morning that day. (Compl. ¶ 14). A notation on the letter states that Bozkurt refused to sign the acknowledgement section. (Compl. Ex. B).

Bozkurt was suspended, with pay, from his position on August 21, 2017, pending further review by the Library's Board of Trustees. (Compl. Ex. C). He received notice on August 28, 2017, that there would be a disciplinary hearing. That hearing took place on November 9, 2017.[1] (Compl. ¶ 18). The complaint alleges that until the hearing, Bozkurt "did not receive a reason in writing for such extreme disciplinary measures." (*Id.*).

Five days after the hearing, on November 14, 2017, Bozkurt was terminated from his

---

[1] The hearing had been continued to that date at Bozkurt's request. (Compl. Ex. D).

3

position as Assistant Director. (Compl. Ex. D). The letter of dismissal stated that he was being terminated for "poor performance and failure to work well with others." (*Id.*). In addition, the letter noted that Bozkurt had been "provided [at the disciplinary hearing] with an opportunity to respond to the reasons provided for taking disciplinary action against [him]." (*Id.*).

> B.  **Procedural Background**

The complaint was originally filed in Essex County Superior Court on November 13, 2018. It asserts three claims. Count One asserts a claim for breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 26-30). Count Two asserts a claim for violation of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H & 11I. (*Id.* ¶¶ 31-34). Count Three appears to assert a Fourteenth Amendment due-process claim under 42 U.S.C. § 1983. (*Id.* ¶¶ 35-38).[2] The City timely removed the action to this court on December 21, 2018. (ECF No. 1). It has now moved to dismiss the complaint for failure to state a claim.

## II. Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*,

---

[2] The complaint mistakenly labels this claim "Count II."

4

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

#### A. Count One—Breach of the Implied Warranty

Count One alleges a claim for breach of the implied covenant of good faith and fair dealing. Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *See UNO Rest., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004) (citation omitted). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (internal quotation marks, alteration, and citation omitted).

The complaint does not allege the existence of any employment agreement or other contract between the parties. Instead, the only possible "contract" referred to in the complaint is Section 4 of the city's administrative code. That section, titled "Establishment of a personnel department," states as follows:

> 1.1 Purpose. It is the purpose of this section to establish a system of personnel administration, for the city of Lawrence, that is consistent with the following merit principles:
>
> . . .
>
> 4. Retention of employees on the basis of their performance. A <u>reasonable</u> effort shall be made to assist employees in correcting inadequate performance; and if following such effort inadequate performance cannot be corrected, separation shall occur.

5

(Compl. Ex. E (emphasis added)).  Bozkurt argues that the city's decision to terminate his employment violated procedural protections provided by Section 4 to which he was entitled.

Bozkurt provides no authority, and this Court is unaware of any, for the proposition that a municipal administrative code can constitute a contract between parties, or that a claim for breach of the implied covenant can be premised on such a code.  The only case he does cite, *Ferguson v. Host Int'l, Inc.*, 53 Mass. App. Ct. 96, 101-02 (2001), stands for the more limited and unremarkable proposition that an employee handbook can be considered part of an employment contract between an employee and employer.

Moreover, even assuming that Section 4 was part of an employment contract and the complaint alleged a breach of that contract, the claim would still likely fail.  Courts are required to interpret contracts according to their plain language.  *See A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth.*, 479 Mass. 419, 428 (2018).  Here, Section 4 states only that the city is obligated to make a "reasonable effort" to help employees correct deficient performance.  (Compl. Ex. E).  The complaint does not allege that Bozkurt's performance was in fact satisfactory.  Indeed, Bozkurt does not seem to dispute that his performance was deficient—in particular, that he failed to respond to his superior's request for meetings, abused his authority, and did not complete his payroll duties in a timely fashion.  Nor does he dispute that Valentin had offered to meet with him biweekly to "provide feedback & guidance" (Compl. Ex. A); that he was warned not to interfere with subordinates' approved time off (Compl. Ex. B); and that he was provided an opportunity to defend himself at a disciplinary hearing (Compl. Ex. D).  The complaint itself, and its exhibits, thus appear to show that the City made a reasonable effort to assist him on correcting his inadequate performance before terminating his employment.

In any event, in the absence of a contract, there can be no claim for breach of the implied

6

covenant of good faith and fair dealing. Accordingly, Count One will be dismissed for failure to state a claim.

### B. Count Two—Violation of the Massachusetts Civil Rights Act

Count Two alleges a violation of the MCRA, which provides a right of action of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, §§ 11H & 11I. A "threat" means "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; "intimidation" means "putting in fear for the purposes of compelling or deterring conduct"; and "coercion" means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994). To survive a motion to dismiss, the complaint must allege that a defendant threatened, intimidated, or coerced the plaintiff into "giv[ing] up something that [he had] the constitutional right to do." *Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 272 (D. Mass. 2018) (quoting *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009)) (internal quotation marks omitted).

There are at least two basic problems with the MCRA claim, either of which is fatal. First, even assuming that Section 4 was violated, Bozkurt was not threatened, intimidated, or coerced into giving up some other right—for example, his right to freedom of speech. Rather, the termination itself was the alleged wrongdoing.[3] The SJC has held that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not

---

[3] In his opposition brief, Bozkurt contends that Exhibit C, the letter dated August 21, 2017, which suspended him with pay, constituted coercion because it "require[ed] him to leave the workplace immediately and amongst other things stay away from City property." (Mem. in Opp. at 4). However, that argument does not save the MCRA claim, as the letter was part of the alleged underlying direct violation—that is, his termination.

7

implicate the [MCRA]." *Longval v. Comm'r of Corr.*, 404 Mass. 325, 333 (1989). Second, the Massachusetts Appeals Court has held that "a municipality is not a 'person' covered by the [MCRA]." *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591-92 (2001). That holding has been followed by the First Circuit and this district. *See Kelley v. LaForce*, 288 F.3d 1, 11 n.9 (1st Cir. 2002); *Dyer v. City of Bos.*, 2018 WL 1513568, at *7 (D. Mass. Mar. 27, 2018); *Meagher v. Andover Sch. Comm.*, 94 F.Supp.3d 21, 45 (D. Mass. 2015). Therefore, Bozkurt cannot assert a MCRA claim against the City, regardless of what transpired. For those reasons, Count Two will likewise be dismissed.

### C. Count Three—Section 1983 Claim

Finally, Count Three purports to allege a Section 1983 claim against the City for "deprivation of rights, privileges, and or immunities secured by the Constitution and laws." (Compl. ¶ 36). "Section 1983 creates a private right of action for redressing abridgements or deprivations of federal constitutional rights." *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995). "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). The second element requires the plaintiff to show that defendant caused the alleged deprivation. *Id.* Here, the City does not dispute that its actions were under "color of state law."

However, the complaint fails to identify any federal constitutional or statutory provision that was violated. It simply claims that "the City terminated Bozkurt's employment . . . in clear violation of [Section] 4 [of the municipal administrative code]." (Compl. ¶ 37). Because "[m]ere violations of state [and local] law do not . . . create constitutional claims," *Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997), on that basis alone this claim must be

8

dismissed.

In his opposition brief, Bozkurt raises two arguments. First, he asserts that his continued employment was a protected "property right, recognized under the [Fourteenth] Amendment." (Mem. in Opp. at 3).[4] The Court will assume that Bozkurt intends to assert a claim that his dismissal was without procedural due process in violation of his Fourteenth Amendment rights. But "[i]n order to mount a successful due process claim stemming from the loss of public employment, an employee must [first] demonstrate that he has a cognizable property interest in his continued employment." *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). "In Massachusetts, employment is presumed to be at-will unless there exists an express or implied contract governing its terms and conditions." *Day v. Staples, Inc.*, 555 F.3d 42, 58 (1st Cir. 2009) (citation omitted). Because the complaint failed to plead the existence of an employment contract, the Court must presume that Bozkurt was an at-will employee with "no reasonable expectation of continued public employment." *Kando*, 880 F.3d at 61. Without a protected property interest, the Section 1983 claim must fail.

Even assuming that Section 4 of the administrative code did vest a property right, this claim would still fail. After determining the existence of a vested property interest, the inquiry turns to "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Here, the exhibits to the complaint itself clearly show that Bozkurt was given two warnings and permitted to defend himself at a disciplinary hearing before the city terminated his employment. That satisfies the "essential requirements of due process: notice and an opportunity to respond." *O'Neill v. Baker*, 210 F.3d 41, 48 (1st Cir. 2000) (affirming dismissal of tenured state employee's due-process claim where she was given

---

[4] This argument, which constitutes only two sentences, is so thinly briefed and argued that there is a strong case for waiver. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

9

warnings that her performance was defective and had opportunity to speak in her own defense in disciplinary hearings) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)) (internal quotation marks and alterations omitted).

Second, Bozkurt suggests that he has a viable *Monell* claim against the city. (Mem. in Opp. at 3). It is well-established, however, that a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Rather, liability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *Kelley*, 288 F.3d at 9 (citing *Monell*, 436 U.S. at 690–91). Here, even assuming that there was a constitutional violation, the complaint does not allege that the City has a policy or custom of terminating employees without due process. Nor can courts infer the existence of such a policy or custom from a single isolated instance of misconduct. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985). Accordingly, the complaint does not state a viable *Monell* claim, and Count Three will be dismissed.

### IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
United States District Judge

Dated: March 27, 2019